[L. A. No. 14014. In Bank.—May 17, 1934.]

JAMES McD. MITCHELL et al., Respondents, v. UNION DRILLING AND PETROLEUM COMPANY (a Corporation), Appellant.

Newby & Newby and Dee Holder for Appellant.

George W. Nilsson and Monto W. Shirley for Respondents.

PRESTON, J.—Appeal on judgment-roll by defendant Union Drilling and Petroleum Company, hereinafter called the "drilling company", from judgment for plaintiffs. The facts found by the court are as follows:

Plaintiffs, owners of lots 67, 69 and 70 of Tract 639, Los Angeles, on November 6, 1923, executed to one Roy W. Perkins an oil and gas lease on said property, reserving to themselves a twenty-five per cent royalty of the gross production from the demised premises. On March 28, 1924, Perkins completed a producing well on lot 70. On May 21, 1924, said lessee transferred to defendant drilling company practically all of his rights under said lease. The lease contained the following clauses, material to this inquiry:

"3. This lease, subject to earlier determination as hereinafter provided, shall remain in force for . . . 20 years from and after the date of this instrument, provided oil or gas or other hydrocarbon substances are produced and saved in paying quantities, and as much longer thereafter as oil or gas or other hydrocarbon substances in paying quantities are produced from the wells on said premises."

"5. The lessee agrees to drill upon said premises not less than three . . . wells for the production of oil or gas, and to protect as far as possible the oil and gas in the said leased premises from drainage by contiguous wells. . . . "

"16. In the event of the breach by the lessee of any of the terms or conditions of this lease and failure to remedy the same within thirty . . . days after written notice of such breach, this lease and demise and all of the rights of the lessee hereunder shall thereupon and thereby, at the option of the lessors, forthwith cease and determine; . . . "

On April 13, 1928, said drilling company quitclaimed to plaintiffs lot 67, leaving only lots 69 and 70 affected by this action. The drilling company operated the above-mentioned well and paid a royalty to plaintiffs on the oil and gas thereby produced until March, 1927, subsequent to which time it made no effort to produce oil or gas or to pay

plaintiffs any royalty or rental. In fact, in violation of the covenants of said lease, the drilling company connived in the action of its president, who operated a well on contiguous lands, thereby draining oil from plaintiffs' property. On numerous occasions between March, 1927, and the date of filing this suit, plaintiffs requested defendant drilling company to produce the well located on their land, to protect said land against drainage and otherwise comply with the terms of the lease, or to quitclaim and return said land to them, but the drilling company refused to do either.

Finally, on March 12, 1930, plaintiffs served a notice of default on said company, giving it thirty days to remedy its conduct. Nothing was done by it and on April 30, 1930, notice of termination of the lease was served upon it. Pursuant to the lease, sixty days thereafter were allowed it to remove from the premises fixtures, improvements and personal property. This likewise was not done. Plaintiffs did not waive the default, either actually or constructively, but later brought this action.

The complaint was in six counts. The first was to quiet title. The second pleaded termination of the lease for failure to produce oil as covenanted. The third pleaded a forfeiture after failure to remedy the breach as provided by paragraph 16 of the lease. The fourth pleaded an action for damages for failure to protect plaintiff's property against drainage from wells on contiguous lands. The fifth pleaded an action for damages for failure to produce oil from the existing well. The sixth was an action for wrongfully holding over after termination of the lease.

Defendants answered, denying the essential allegations set forth in the several causes of action and affirmatively alleging, in defense, that the lease was modified by a later agreement between the parties which relieved defendant from drilling further wells on the premises, pending the development of surrounding territory, and preserved its rights under the lease until such time as surrounding development would indicate whether additional expenditures for the development of plaintiffs' property would be justified. On issues so joined the case went to trial.

The court thereafter, on motion of defendants, granted a nonsuit as to causes of action five and six. The trial, which

was being conducted before the court, sitting without a jury, was continued and at the conclusion of the hearing the court found the facts to be substantially as first hereinabove related.

The court further found that although the lease provided that the lessee should drill three wells on the property, the parties, by an agreement dated April 28, 1924, relieved defendant company from drilling the two additional wells, until it was determined that a deeper sand existed, but did not relieve it from complying with any of the other terms of the lease. The court then concluded, as a matter of law, that by reason of the failure to produce or save from said well, after March, 1927, oil, gas or other hydrocarbon substances, said lease was terminated by the provisions of paragraph 3 thereof; that by reason of defendant company's failure to remedy the defaults called to its attention by plaintiffs' notice of March 12, 1930, the lease was terminated by plaintiffs, as provided in paragraph 16 thereof, by notice of termination served upon said defendant April 30, 1930; that defendants were without right or interest in the property; that plaintiffs were entitled to exclusive possession of the demised premises, together with all personal property, fixtures and improvements placed thereon by the lessee and there remaining on June 30, 1930, and, lastly, that plaintiffs were entitled to damages against defendant company in the sum of $4,513, which sum was, on motion for new trial, reduced to $2,256.50.

Judgment followed for plaintiffs, quieting their title to lots 69 and 70, declaring the lease terminated by plaintiffs as of April 30, 1930, declaring a forfeiture by defendants of all personal property remaining on the premises on June 30, 1930, and awarding plaintiffs, as damages for failure to produce oil and gas from the leased premises and to protect the oil and gas in said premises from drainage by contiguous wells from April 1, 1927, to November 1, 1931, the sum of $2,256.50, plaintiffs to also receive their costs. Defendant drilling company appealed on the judgment-roll alone.

Appellant does not complain of the decree is so far as it quiets plaintiffs' title to the property. But appellant insists that that portion of the judgment awarding damages

is unsupported by the findings and is contradictory thereto; that plaintiffs, having elected to treat the lease as terminated, may not, at the same time, treat it as in existence for the purpose of recovering damages thereunder. In this connection attention is called to the fact that although the judgment declares that the lease was terminated by plaintiffs on April 30, 1930, the court, in its conclusions of law, found, first, that the lease was terminated by the provisions of paragraph 3 thereof (above quoted) in March, 1927, and, secondly, that it was terminated by plaintiffs on April 30, 1930.

We find no difficulty in resolving this inconsistency in support of the declaration of the judgment. To hold that the lease terminated by its own terms in March, 1927, would be to so interpret paragraph 3 thereof as to place the contract in full control of one of the parties to the injury of the other party. Obviously, it was never contemplated that the lessee might terminate the lease at will by simply stopping the production of a completed well and, in reliance upon said provision, escape all responsibility to the other party for such wrongful act. The declaration of the judgment that plaintiffs terminated the lease as of April 30, 1930, is sufficiently supported by the findings and by proper construction of the plain provisions of the lease, particularly the above-quoted paragraph 16 thereof.

 It follows that it was proper for the court to award damages for breach of the covenants of the lease, including such damages as would naturally flow from the breach committed. Furthermore, counts III and IV of the complaint proceed on the theory that the plaintiffs suffered by reason of the failure of the defendants to ''protect, as far as possible, the oil and gas in said leased premises from drainage by contiguous wells''; that the defendants continuously from March, 1927, to the time of trial, drained oil from beneath plaintiffs' property to their damage in the sum of $7,500. The court found that the plaintiffs had suffered damages as alleged in count IV in the sum of $2,256.50. Under any theory of the case the plaintiffs were entitled to damages up to April 30, 1930. It is insisted, however, that any damages awarded for a period subsequent to that date would come within the allegations of the counts as to which

a nonsuit was granted. This is not necessarily so, so far as the judgment-roll discloses. The allegations of count IV are broad enough to permit proof of damage to the time of trial, as the defendants remained in possession and continued to drain the plaintiffs' land up to that time. The court found the amount of damages suffered by the plaintiffs to the time of trial, and it must be assumed in support of the findings and judgment that the proof, which is not before us, was sufficient to support the finding.

The judgment is affirmed.

Shenk, J., Langdon, J., and Waste, C. J., concurred.